















BJR   10/30/00   9:29

3:00-CV-02175   MYRIAD INTL INC V. DAUGHERTY

*1*

*CMP.*

Sallie A. Blackman (141830)
121 Broadway, Suite 347
San Diego, California  92101
Telephone : (619) 334-6060
Facsimile  : (619) 334-7070

Attorney for Plaintiffs

00 OCT 27 AM 11: 35

B. Reed

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Myriad International, Inc.,
Worldwide Builders, Inc., Jerome O.
Crawford, J. Thomas Wood, Dr. Michael
Goldstein, Victor Parks, James E. Webb,
David Webb, Jon Curnow, and Gerald
Delgadillo

Plaintiffs,

vs.

William M. Daugherty, Dennis Carlton, Kirk
Jones, W.M. Daugherty & Company, L.L.C.,
and Greenwich-Memphis Housing Partners,
L.L.C.

Defendants.

Case No. 00 CV 2175 K (NLS)

**COMPLAINT FOR:**

1.  **Breach of Partnership Agreement;**
2.  **Intentional Breach of Fiduciary Duty;**
3.  **Abuse of Control;**
4.  **Waste of Partnership Assets;**
5.  **Gross Mismanagement;**
6.  **Fraudulent Inducement;**
7.  **Conspiracy; and**
8.  **Defamation**

**Plaintiffs Demand a Jury Trial**

## INTRODUCTION

Plaintiffs Myriad International, Inc., Worldwide Builders, Inc., Jerome O.

Crawford, J. Thomas Wood, Dr. Michael Goldstein, Victor Parks, James E. Webb, David

Webb, Jon Curnow and Gerald Delgadillo, by their attorney, submit this Complaint against

William M. Daugherty, Dennis Carlton, W.M. Daugherty & Company, L.L.C. (collectively

"Daugherty defendants"), and Greenwich-Memphis Housing Partners, L.L.C. for breach of

partnership agreement, breach of fiduciary duty, abuse of control, waste of partnership assets,

gross mismanagement, fraudulent inducement, conspiracy, and defamation and against Kirk

Jones for conspiracy.

## NATURE OF THE CASE

1. This case is about greed. Greed on the part of the managing partner of a partnership that consisted of three companies, a New York investment banking firm, a California construction company, and a Tennessee non-profit organization. William M. Daugherty & Company, L.L.C. ("WMD & Co."), the New York investment banking firm, was looking for an opportunity to make a name for itself in the construction industry, by monopolizing the low income housing market in the South. The opportunity presented itself when the Daugherty defendants, WMD &Co., WMD & Co.'s managing member, William M. Daugherty ("Daugherty"), and WMD & Co's managing director, Dennis Carlton ("Carlton"), learned that plaintiff, Worldwide Builders, Inc. ("WBI"), had developed a method of constructing homes quickly and economically using light gauge steel. The Daugherty defendants pursued a business relationship with WBI and fraudulently induced WBI to form a partnership with WMD & Co. entitled Greenwich-Memphis Housing Partners, L.L.C. ("GMHP" or "the partnership"). WMD & Co. was the managing member of GMHP. The third partner of GMHP was Impact 90's, a Memphis, Tennessee non-profit organization that helped first time low income home buyers locate affordable homes. The plan proposed by the Daugherty defendants was a simple one. Through GMHP, WBI would construct 27 low income homes in Memphis, Tennessee and Impact 90's would locate buyers for the low income homes. The three partners, WMD & Co., WBI, and Impact 90's, would then split the profits from the sale of the homes. WMD & Co. and WBI would receive the largest profit shares. The Daugherty defendants promised WBI that WBI's share of the profits from the sale of the low income homes would be at least $200,000. Through the construction of the 27 homes, GMHP would gain the reputation for constructing innovative and inexpensive low income homes, which reputation would attract many lucrative contracts to build low income homes throughout the South and beyond. The partnership would thereby yield substantial profits for WBI. This plan was the substance of the partnership arrangement between WBI, WMD & Co. and Impact 90's.

2.  However, the Daugherty defendants never intended to share any profits from the sale of the 27 homes with WBI. They never intended, and in fact refused, to cooperate in making the construction of low income homes a profitable venture for WBI. Instead, the Daugherty defendants intended to use the partnership to convince members of the construction industry that WMD & Co. was a successful player in the low income home market and that WMD & Co., alone, had the talent and expertise to complete construction of multiple low income homes. The Daugherty defendants accomplished this goal by advertising WMD & Co.'s partnership with WBI throughout the state of Tennessee. The Daugherty defendants and GMHP advertised WMD & Co's partnership with WBI at a ribbon cutting ceremony to which 9,000 Tennessee officials and dignitaries were invited, in Tennessee newspapers, and in the flyers that were distributed to prospective buyers of the low income homes.

3.  After advertising WMD & Co.'s partnership with WBI so that WMD & Co.'s name was synonymous with the successful and inexpensive construction of low income housing, the Daugherty defendants and GMHP advanced their scheme to monopolize the low income home market and to keep that business for themselves. The Daugherty defendants and GMHP knew that WBI had the expertise and designs needed to construct inexpensive low income homes using light gauge steel. Defendants also knew that, in reliance on the Daugherty defendants' promises of more than $200,000. of profit and other lucrative partnership ventures, WBI had sent its top construction personnel to Tennessee to organize, manage and oversee construction of the low income homes. Gerald Delgadillo ("Delgadillo") was the General Manager of WBI's construction division. Kirk Jones ("Jones") was the Operations Manager of WBI's construction division. Defendants were aware that Delgadillo and Jones were knowledgeable regarding WBI's steel-framed homes and construction techniques. Defendants conspired to raid WBI of its top construction personnel. The Daugherty defendants and GMHP conspired with Jones to breach Jones' employment contract with WBI. Jones now works for WMD & Co./GMHP. Defendants attempted, through Jones, to convince Delgadillo to breach his employment contract with WBI and join WMD & Co./GMHP, but  Delgadillo refused to participate in defendants' clandestine efforts to gauge WBI. Defendants realized that, as long

as WBI still had Delgadillo at the helm of its construction division, WBI could successfully compete with defendants for business in the low income home construction market after defendants put WBI in a position where WBI had no alternative other than withdrawing from the GMHP partnership. When WBI's steel-framed home techniques won a prestigious industry award, defendants further realized that WBI would have a competitive edge over defendants in that market.

4. To eliminate the competition, defendants conspired to publicly and internally discredit WBI. Defendants tried to discredit WBI publicly by falsely accusing WBI, WBI's current and former officers, directors, shareholders, and employees, Myriad, and Myriad's current and former officers, directors, shareholders and employees of various wrongdoing. Defendants attempted to discredit WBI, internally, by disseminating to WBI's officers, directors, and employees, false and negative information regarding the company and its top management. It was defendants' intent that, with WBI discredited and out of the way, and with WBI's Operations Manager under their wing, defendants could use WBI's award winning designs to emerge on the low income home construction market, without sharing the profits with WBI.

5. In addition, pursuant to the Daugherty defendants' conspiracy, involving WBI in GMHP was a set up. The Daugherty defendants knew that WBI, while highly skilled and sitting on a gold mine of new steel framed home design methods, was short of funds and could not participate in the partnership without funding. Initially, the Daugherty defendants offered Myriad funding via a convertible debenture deal that would have essentially turned over control of WBI and Myriad to WMD & Co.. When Myriad turned down the convertible debenture deal, the Daugherty defendants offered Myriad a $150,000. line of credit to induce WBI to become a partner in GMHP and to cover WBI's operating expenses during the construction of the 27 homes. The collateral for the line of credit was a stock certificate for one million shares of Class A Myriad stock. WMD & Co. also received a warrant to purchase 1,500,000 shares of Myriad Class A Common Stock. The understanding and agreement between the Daugherty defendants and Myriad was that Myriad would repay the $150,000. out of the $200,000. profits that WBI would realize upon the sale of the homes. Defendants intentionally made certain that

WBI never received $200,000. in profits by wasting the profits. The Daugherty defendants and GMHP wasted the profits and partnership assets, over WBI's objections, by revising the original house agreed to and developing a hybrid that was totally inappropriate and too costly for the area GMHP was building in, enlisting the services of a realtor, McSwain realtors, that the Daugherty defendants knew was looking for "A paper" mortgage candidates in an area where clearly none would buy a home, unilaterally announcing that GMHP would give away free computers, monitors and printers to every home buyer, funding an extravagant ribbon cutting ceremony and dinner upon completion of the first model home, and hiring a public relations firm to promote the grand opening event. Defendants knew, and intended, that these expenditures would deprive WBI of the promised profits.

6.  The Daugherty defendants and GMHP breached the partnership agreement, breached the fiduciary duty of care and loyalty that WMD & Co. owed to its partner, WBI, squandered the profits that were earmarked for WBI, surreptitiously hired one of WBI's senior construction personnel, attempted to hire WBI's head of construction, and attempted to put WBI out of business. WBI and Myriad relied, to their detriment, on defendants' false promises and underhanded schemes.

## PARTIES

7.  Plaintiff Myriad is a Delaware corporation which was organized in 1992.  The Company is a publicly held corporation with approximately 300 shareholders of record as of January 31, 1999.  The Company's Class A Common Stock is traded on the NASD Electronic Bulletin Board under the symbol MRAD.

8.  Plaintiff WBI was incorporated in Delaware in September 1994.  The Company has approximately 85 shareholders.  WBI is a Company that designs and builds steel-framed homes. Plaintiffs Jerome Crawford, Victor Parks, James Webb, David Webb. Dr. Michael Goldstein, J. Thomas Wood, Jon Curnow and Gerald Delgadillo are individuals.

9.  Defendant WMD & Co. is an Investment Banking Firm that purports to provide investment and securitization services to institutions, fiduciaries and investors. WMD & Co.'s services typically may include due diligence reviews, including asset inspections and

valuations. WMD & Co. was the managing member of GMHP. WMD& Co. is a Delaware limited liability Company. WMD & Co. has offices in New York, New York and Santa Barbara, California.

10.  Defendant Daugherty is the managing member of WMD & Co. Daugherty orgainized WMD & Co. Daugherty resides in Santa Barbara, California.

11.  Defendant Carlton is WMD & Co.'s second in command and managing director. Carlton resides in New York State.

12.  Defendant GMHP is a Delaware limited liability company, of which WMD& Co is now the sole member. GMHP was created as a partnership between WMD& Co, WBI, and Impact 90's, a Memphis nonprofit corporation.  The first project of GMHP was to build 27 homes on lots in the Schoolfield – St. Elmo Subdivision in Memphis, Tennessee. ("the Schoolfield project") GMHP's principial place of business is located in Tennessee.

13.  Defendant Jones was employed by WBI as the Operations Manager of WBI's construction division until he breached his employment contract with WBI. Jones is now employed by GMHP and/or WMD & Co. Jones resides in California and maintains a residence in Tennessee.

## JURISDICTION AND VENUE

14. Jurisdiction of this Court arises under diversity of citizenship.

15. Venue is proper in this court because some of the actions complained of herein occurred in substantial part in San Diego County, California.  WMD & Co. is incorporated in Delaware but maintains its executive offices in New York, New York and Santa Barbara, California. Some of the wrongs complained of herein took place in California, and some of the defendants live and/or work in California.  Many of the prospective witnesses to the acts alleged herein reside in California. Myriad and WBI are incorporated in Delaware but maintain their principal executive offices in San Diego, California.

## STATEMENT OF FACTS

16.  In May 1998, WBI entered into a construction contract with Homes Across America Inc (HAAI) a corporation that was going to buy and develop land in Memphis, TN. HAAI indicated to WBI that it had an option on some land owned by Godwin and Company and that HAAI would purchase this land with funds from investors.  WBI did not know at that time that the investor was WMD & Co.  Several months passed and it was becoming apparent that HAAI was having difficulty arranging financing.  In October 1998, HAAI informed WBI that HAAI was no longer seeking financing from WMD& Co. because HAAI was frustrated with WMD& Co.'s endless "due diligence" investigation and inability to make a decision regarding proceeding with the project.  Shortly thereafter, WBI had its first contact with WMD& Co. WBI's Chief Executive Officer, Jerome Crawford ("Crawford") received a telephone call from Carlton, who indicated he was an employee and "in house" attorney for WMD& Co. and that he and the owner of the company would like to come to San Diego and meet with WBI to discuss building homes in Memphis.  Crawford and Carlton agreed to have a dinner meeting at a local restaurant in the UTC La Jolla, California area. Daugherty, Carlton and WBI employees and officers, Victor Parks ("Parks"), Jones and Crawford, attended the dinner meeting. Daugherty and Carlton asked numerous questions about WBI's ownership, experience, history and financial status. Daugherty and Carlton were informed in very specific responses that, while WBI's top construction personnel had substantial construction experience, WBI had limited construction experience. Daugherty and Carlton were apprised of WBI's construction experience. In response to a direct question from Daugherty asking WBI's officers and employees how much money WBI had in the bank, the Daugherty defendants were told that WBI's financial resources were minimum. WBI made it very clear to defendants that WBI and Myriad, had minimum resources available to mobilize a project, that funds would have to be provided by the developer, and that, under WBI's agreement with HAAI, HAAI had agreed to fund WBI's involvement in any construction project.  At the close of the meeting, Daugherty informed WBI that WMD & Co., Daugherty and Carlton were going to proceed with an initiative

to build homes in Memphis, and asked if WBI would be interested in working with them and others in Memphis as partners in a Limited Liability Company. Carlton subsequently sent WBI a letter identifying the partners and their respective roles.

17.  On November 11, 1998, at the request of Carlton, a meeting was held in Memphis, Tennessee. During this trip, Parks and Crawford accompanied Carlton and Daugherty to the offices of Godwin Land Company.  WMD& Co. had apparently wanted to buy the land from Godwin Land Company that HAAI had an option on.  Parks and Crawford observed while Daugherty negotiated a handshake deal to buy 27 lots.  It took approximately six months for WMD& Co. to close the land purchase.  The delay was the beginning of a pattern of mismanagement of the project by WMD& Co.  Prior to Godwin Land deal closing Daugherty wasn't sure that the deal was going to close so he requested that WBI meet him in Memphis, Tennessee to identify alternative land to purchase and build a model home on.

18.  In April 1999, WBI, represented by Parks and Crawford, and WMD& Co. represented by Carlton and Daugherty, met in Memphis, Tennessee to locate and purchase alternate land to build the model home and housing development if the Godwin Land purchase was not consummated.  WBI and the Daugherty defendants agreed that three (3) lots located on Shelby Drive owned by the Mars Hill Church should be purchased.  The Daugherty defendants agreed to purchase the lots. A purchase agreement was prepared by WMD& Co. attorneys and submitted to the Seller's representative.  The seller accepted the offer but was never paid by WMD& Co.. WMD& Co. defaulted on the agreement and did not extend the Purchase Agreement.  Crawford informed Dr. Michael Goldstein, ("Goldstein"), a shareholder of WBI, of the opportunity and Goldstein subsequently bought the property using his own funds.

19.  In April of 1999, the Godwin land purchase closed.  The construction of the first model home began in May of 1999.  Prior to and during the construction of the model home, the Daugherty defendants, as the managing member of GMHP, made several unnecessary and unplanned upgrades to the home which substantially increased the construction cost.  The Daugherty defendants were informed by WBI and Impact 90's that, because of the location of

the development in a low income neighborhood, the cost of the upgrades could not be recouped by increasing the selling price. The Daugherty defendants disregarded this information and ordered the upgrades to be made. The cost of the upgrades increased the per house cost by approximately $7,000.00 over budget.

20. On May 21, 1999, an Option to Purchase Member Interests, ("option agreement") was executed by Crawford, on behalf of Myriad, and by Daugherty, on behalf of WMD & Co. The option agreement grants Myriad the right to purchase from WMD & Co. an aggregate of 43.75% of the member interests in GMHP for $1.00. The option agreement was purely perfunctory. The Daugherty defendants publicly and privately referred to, operated with, and treated WBI as GMHP's partner both before and after the option agreement was executed.

21. On June 10, 1999, Myriad agreed to a Line of Credit provided by WMD& Co. The Line of Credit arrangement was initiated by the Daugherty defendants. At the Daugherty defendants' request, Crawford forwarded to them a copy of the Myriad Private Placement Memorandum ("PPM") which spelled out Myriad's financial condition. After reviewing the PPM WMD& Co. offered plaintiffs funding via a Convertible Debenture, which would have turned over control of Myriad and WBI to WMD& Co. Crawford notified the Daugherty defendants that the convertible debenture proposal was not in the best interest of Myriad and declined their offer. Carlton became extremely agitated and angry when Crawford informed the Daugherty defendants that Myriad would not accept the convertible debenture proposal. Daugherty then proposed funding via a Line of Credit. Plaintiffs agreed to accept the Line of Credit only after reviewing WMD & Co profit projections which showed that WBI would earn $200,000 or more. The collateral for the Line of Credit was a Security agreement wherein Myriad pledged 1,000,000 shares of Myriad Class A Common Stock. A Stock Power was signed by Crawford on behalf of Myriad and the stock certificate was sent to WMD& Co. WMD& Co. also received a warrant to purchase 1,500,000 shares of Myriad Class A Common Stock at a purchase price of ten cents if exercised before December 31, 1999 or twenty cents if exercised after December 31, 1999. The Daugherty defendants knew and agreed that the Line of Credit was to be paid back out of WBI's profit share from the construction of the 27 homes.

22. The Daugherty defendants and GMHP distributed flyers advertising the model homes at the Schoolfield-St. Elmo Subdivision. On each side of the flyer, defendants advertised "Greenwich Memphis Housing Partners, L.L.C., consisting of W.M. Daugherty & Company, L.L.C., Worldwide Builders, Inc., Impact 90's".

23. On July 13, 1999, the model home was completed but, during the construction, the Daugherty defendants organized a grand opening. The grand opening included a band and invitations to 9,000 guests, followed by a dinner party at the Hunt-Phelan House. This was a costly and unnecessary event to which WBI and Impact 90's objected. The Daugherty defendants also hired a public relations firm to assist in advertising the Grand Opening. This advertising of the project was in direct contradiction to the low-key approach that the GMHP partners had agreed to at their initial meetings. The Grand Opening event was advertised by the Daugherty defendants as though WBI was building 1,000 homes instead of 27.

24. On or about July 13, 1999, Daugherty stated that the partners in GMHP were W.M.Daugherty & Company, Worldwide Builders, Inc. and Impact 90's. Daugherty stated that the partnership was building affordable houses in Memphis, Tennessee. Daugherty stated that the partnership had purchased 27 lots near the St. Elmo subdivision and that the partnership planned to construct 27 steel framed houses.

25. On or about July 18, 1999, Carlton referred to WBI and WMD & Co. as partners and stated that the partnership would be looking for a large concentration of lots to build on. Carlton stated that the partnership was also looking for development opportunities in other cities.

26. On or about July 18, 1999, the Daugherty defendants stated that WMD & Co. was a partner with Worldwide Builders, Inc. of San Diego, California.

27. From the time period of December, 1998, through November,1999, defendants have stated to Myriad, WBI, and several other individuals and entities located in Tennessee and other states, including California, that WBI was a partner in the partnership of GMHP, and that the partnership of GMHP consisted of WBI, WMD & Co. and Impact 90's .

28. Once the model home was completed, instead of continuing the construction of homes so that there would be no work stoppage and WBI wouldn't lose its local construction personnel, the Daugherty defendants delayed the construction of the remaining 26 homes.  It was becoming evident to Carlton and Daugherty that WBI and Impact 90's realized that WMD & Co. was not performing its fiduciary duties as the Managing Member of GMHP, to WBI and Impact 90s.  WMD & Co. had initially agreed to provide construction funding so that the remaining 26 houses could be built all at one time. But the Daugherty defendants wouldn't make a commitment to proceed. Even though they knew WBI's financial condition prior to the creation of GMHP and they had agreed to finance the project, the Daugherty defendants feigned concern about WBI's financial viability to escape their commitment to provide financing.

29. On July 11, 1999, WMD & Co. began its campaign to terminate Impact 90's participation and partnership in GMHP.  The Daugherty defendants claimed Impact 90's didn't satisfactorily perform its duties as sales agent and should be replaced by a real estate agent. This action came after WMD & Co. had put Impact 90's in a position to fail from the beginning of the partnership because McSwain realtors, the firm that GMHP had engaged to process the potential buyers' loan applications, was primarily looking for "A" paper mortgage candidates in an area where clearly none would buy. After GMHP was formed and became a legal entity, the Daugherty defendants never gave Impact 90's the promised partnership share.

30. In November 1999, WBI began to have problems receiving timely payments from GMHP for services already rendered. The delay in payments caused WBI to suffer serious cash flow problems.  WBI was forced to send a letter threatening to cease work if payment wasn't made. The Daugherty defendants and GMHP also attempted to condition payment of WBI's invoices on escrow closing for the sale of the house on Lot 26 of the ST. Elmo-Schoolfield subdivision. Based on the delay of payment and attempt on the part of the Daugherty defendants and GMHP to add conditions that were not contemplated or agreed to by the partners, WBI ceased work on the construction of the homes.

31.   Prior to continuing the construction project, the Daugherty defendants demanded that WBI place $150,000. in escrow, and that the houses be built at cost. The Daugherty defendants knew, and intended, that, for the past year, Myriad and WBI had spent most of their time and resources preparing to proceed with the Schoolfield project and that, if Myriad and WBI were not able to proceed with the Schoolfield project, the result could be disastrous for the two companies.

32.   On December 27, 1999, instead of calling WBI and discussing the matter directly with management, Daugherty sent a letter to Myriad and WBI's officers, employees, members of the Board of Directors, and shareholders, including Goldstein, stating that, in March 1999, WBI's corporate charters were voided due to nonpayment of franchise taxes, and that plaintiffs owed over $300,000 in back taxes.  WBI was not aware that its charters were voided because the company had made several office moves and had not received any notices regarding the delinquent status of taxes.  Myriad and WBI had their charters reinstated on January 12, 2000. Plaintiffs owed less than $1,000 in back taxes, as opposed to the $300,000. of back taxes reported by Daugherty. Daugherty sent the letter to discredit the management of WBI and Myriad and to make it appear that the companies were finished.

33. After WMD & Co. terminated Impact 90's participation and partnership in GMHP and WBI's relationship with them became antagonistic due to the continuing and deliberate mismanagement of GMHP by the Daugherty defendants, defendants set in motion a plan to publicly discredit WBI, Myriad, and its management in order to lure away key construction management personnel. On April 21, 2000, WMD & Co. and GMHP filed a lawsuit naming plaintiffs as defendants and alleging that the individual plaintiffs, WBI, and Myriad committed various acts. The Daugherty defendants' goals in filing the meritless lawsuit against the individuals were to publicly discredit plaintiffs, cause dissension among WBI's ranks, steal WBI's key construction personnel in order to develop defendants' own construction division, and put WBI out of business. Jones was not named in the lawsuit because he conspired with the other defendants to breach his employment contract with WBI and help defendants develop their own construction division. Jones now works for defendants. Delgadillo, who

refused defendants' efforts to lure him away from WBI, was named as a defendant in the lawsuit in retaliation for his refusal to breach his employment contract with WBI and work for defendants.

## DUTIES OF WMD & CO AS MANAGING MEMBER OF GMHP

34. By reason of its position as managing member of, and its ability to control the financial business of, the partnership, GMHP, at all relevant times, WMD & Co and the Daugherty defendants owed WBI fiduciary obligations of candor, fidelity, trust, and loyalty, and were required to control GMHP in a fair, just and equitable manner, as well as to act in furtherance of the best interests of all of the partners of GMHP, including WBI, and not in furtherance of the Daugherty defendants' own interests. Defendants' fiduciary obligations are set forth below.

35. The misconduct of the Daugherty defendants complained of herein involves a knowing and culpable violation of their fiduciary obligations as managing member of GMHP, the absence of good faith on their part, and their reckless disregard for their duties to the partnership and their partner, WBI. The Daugherty defendants were aware, or should have been aware, that their misconduct posed a risk of serious injury to WBI.

36. To discharge their fiduciary duties, the Daughery defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls, and financial affairs of GMHP pursuant to their fiduciary obligations to use the same care and diligence as would an ordinary prudent person in a like position. The Daugherty defendants were required, among other things:

    (a) To refrain from competing for a business opportunity that is actively pursued or sought by the partnership;

    (b) To disclose to the other partners all information relating to the partnership, including accounting to the other partners for benefits received by WMD & Co. in connection with the partnership;

    (c) To act in the highest good faith toward the other partners, including WBI;

    (d) To deal fairly with the other partners, including WBI;

-13-

(e) To refrain from taking unfair advantage of its position as managing member of the partnership;

(f) To, in good faith, manage, conduct, supervise and direct the business and affairs of GMHP carefully and prudently;

(g) To neither breach, nor knowingly permit an employee of WMD & Co to breach, the partnership agreement between WMD & Co., WBI and Impact 90's;

(h) To exercise reasonable control and supervision over the officers and employees of WMD & Co.;

(i) To remain informed as to the status of GMHP's operations, and, upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(j) To maintain and implement an adequate system of protection of proprietary internal confidential information, such that no partner, including WMD & Co., would be able to misappropriate internal confidential information, construction techniques, construction methods or construction designs for its own benefit and profit, by hiring the key construction personnel of WBI or otherwise.

37. As managing and controlling members of WMD & Co. and managing member of GMHP, Daugherty and Carlton were directly responsible for authorizing, permitting the authorization of, or failing to monitor, the practices which resulted in the misappropriation of WBI's confidential corporate information and construction designs. Daugherty and Carlton further directed their attorneys to file a malicious, vindictive, retaliatory and false lawsuit against virtually every individual affiliated with WBI or Myriad, including shareholders, officers, directors, management and employees of WBI and Myriad in order to (a) eliminate WBI as a competitor in the low income home construction market and (b) put WBI out of business. The Daugherty defendants and GMHP, under the direction of the Daugherty defendants, among other things, planned and created (or caused to be planned and created), proposed (or caused

the proposal of) and authorized, approved and acquiesced in the conduct complained of herein. Each of the defendants had knowledge of and actively participated in and approved of these wrongdoings. Moreover, these alleged acts of wrongdoing subjected WBI to damages and unreasonable risks of loss.

38. In breach of the partnership agreement and in violation of their fiduciary duties, the Daugherty defendants, over WBI's and Impact 90's objections, permitted and/or caused GMHP to conduct its business in a wasteful and imprudent manner, wasted the assets of GMHP by unilaterally altering the agreed upon manner and method of constructing, marketing and selling the homes in the Schoolfield subdivision, deliberately, and in bad faith, ran up expenses on the Schoolfield project so that WBI would be deprived of the profit that the Daugherty defendants promised WBI and so that Myriad could not repay the $150,000. Line of credit, conspired with Jones to breach his employment contract with WBI and work for the Daugherty defendants and GMHP, tried to steal WBI's head of construction so that WMD & Co. could start its own construction division utilizing the steel framing techniques utilized and perfected by WBI, competed with the partnership for business opportunities that the partnership was pursuing, interfered with the business of, and tried to put partner, WBI, out of business by puclicly and internally discrediting WBI, trying to undermine WBI and cause dissension among its ranks, and using Jones to misuse and appropriate WBI's confidential non-public construction information for their personal profit.

Defendants also defamed plaintiffs orally, and in writing. Defendants falsely accused plaintiffs of being liars, co-conspirators and thieves. Defendants filed a false and malicious lawsuit against plaintiffs in the Circuit Court of Tennessee, Shelby County, located in Memphis, Tennessee. In the lawsuit, defendants accused plaintiffs of fraud, conspiracy to defraud defendants, and conversion. Defendants knew, or should have known, that these allegations were false when made. The reputation of plaintiffs, who are well-respected current and retired professionals, businessmen, and educators, has been permanently marred by the false allegations set forth in the complaint filed in the Tennessee action and by defendants' false

statements and character assassination. The false and defamatory complaint was verified and signed under penalty of perjury by defendant Carlton.

## FIRST CAUSE OF ACTION

### For Breach of Partnership Agreement

39. Plaintiffs repeat and re-allege ¶¶1-38 as though set forth fully herein. This cause of action is asserted against all defendants except Jones.

40. Each of the defendants engaged in and/or aided and abetted the aforesaid conduct in intentional breach of the partnership agreement between defendants and WBI as described herein.

41. By reason of the foregoing, WBI and Myriad have been damaged and have sustained, and will continue to sustain, substantial injury. In addition, in taking the actions complained of herein, defendants have acted with fraud, malice and oppression, thus entitling WBI and Myriad to an award of punitive damages.

## SECOND CAUSE OF ACTION

### For Intentional Breach of Fiduciary Duty

42. Plaintiffs repeat and re-allege ¶¶1-41 as though set forth fully herein. This cause of action is asserted against all defendants except Jones.

43. Each of the defendants engaged in and/or aided and abetted the aforesaid conduct in intentional breach of the fiduciary duties which they owed to WBI.

44. By reason of the foregoing, Myriad and WBI have been damaged and have sustained, and will continue to sustain, substantial injury. In addition, in taking the actions complained of herein, defendants have acted with fraud, malice and oppression, thus entitling Myriad and WBI to an award of punitive damages.

## THIRD CAUSE OF ACTION

### For Abuse of Control

45. Plaintiffs repeat and re-allege ¶¶1-44 as though set forth fully herein. This cause of action is asserted against all defendants, except Jones.

46.  Defendants' conduct constituted an abuse of their ability, as managing member of GMHP, to control and influence the partnership's assets and profits, and to thereby control WBI's ability to receive the profits promised to WBI by defendants.

47.  By reason of the foregoing, Myriad and WBI have been damaged and have sustained, and will continue to sustain, substantial injury.

## FOURTH CAUSE OF ACTION

### For Waste of Partnership Assets

48.  Plaintiffs repeat and re-allege ¶¶1-47 as though set forth fully herein.  This cause of action is asserted against all defendants, except Jones.

49.  As a result of the foregoing conduct, defendants have wasted valuable partnership assets.

50.  By reason of the foregoing, WBI and Myriad have been damaged and have sustained, and will continue to sustain, substantial injury.

## FIFTH CAUSE OF ACTION

### For Gross Mismanagement

51.  Plaintiffs repeat and re-allege ¶¶1-50 as though set forth fully herein.  This cause of action is asserted against all defendants, except Jones.

52.  As detailed more fully herein, defendants each possess a duty to WBI to prudently supervise, manage and control GMHP's operations in the best interest of the GMHP partners, including WBI.

53.  Defendants, by their actions, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and duties with regard to prudently managing the assets of GMHP as set forth herein.

54.  As a proximate result thereof, WBI and Myriad have been damaged and will continue to suffer damages, and have sustained and will continue to sustain substantial injury.

## SIXTH CAUSE OF ACTION

### For Fraudulent Inducement

55.  Plaintiffs repeat and re-allege ¶¶1-54 as though set forth fully herein.  This cause of action is asserted against all defendants, except Jones.

56.  Each of the defendants engaged in the aforesaid conduct and fraudulently induced WBI into the partnership agreement and into GMHP based upon defendants' fraudulent misrepresentations. Based on defendants' fraudulent misrepresentations, including, without limitation, defendants' representations that they intended to manage GMHP in such a manner that WBI would earn a profit of over $200,000, WBI and Myriad relied to their detriment on the misrepresentations in entering into these contracts. Had WBI and Myriad known the fraudulent misrepresentations made by defendants, WBI would not have entered into the partnership agreement, entered into the partnership, sent its top construction personnel to work on the Schoolfield project, entered into various agreements, incurred various liabilities with third parties, or permitted defendants access to WBI's unique, confidential, proprietary and award winning construction designs.

57.  By reason of the foregoing, WBI and Myriad have been damaged and have sustained, and will continue to sustain, substantial injury. In addition, in taking the actions complained of herein, defendants have acted with fraud, malice and oppression, thus entitling WBI and Myriad to an award of punitive damages.

## SEVENTH CAUSE OF ACTION

### For Civil Conspiracy

58.  Plaintiffs repeat and re-allege ¶¶1-57 as though set forth fully herein.  This cause of action is asserted against all defendants.

59.  The Daugherty defendants and GMHP unlawfully conspired with each other to induce WBI to enter into the partnership agreement with WMD & Co., become a partner in GMHP in order to put WBI out of business, and steal WBI's unique and proprietary construction designs. All of the defendants unlawfully conspired with each other to interfere with WBI's business, steal WBI's unique and proprietary construction design, breach Jones'

employment contract with WBI, hire Jones to work for defendants, attempt to convince WBI's head of construction to breach his employment contract with WBI, and maliciously put WBI out of business.

60. By reason of the foregoing, WBI and Myriad have been damaged and have sustained, and will continue to sustain, substantial injury. In addition, in taking the actions complained of herein, defendants have acted with fraud, malice and oppression, thus entitling Myriad and WBI to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### For Defamation

61.  Plaintiffs repeat and re-allege ¶¶1-60 as though set forth fully herein.  This cause of action is asserted against all defendants, except Kirk Jones.

62. Defendants made false non-privileged statements about plaintiffs to third parties.

63. Defendants published such false statements about plaintiffs.

64. Defendants made and published such false statements about plaintiffs with malice and without privilege.

65. Such false and published statements were defamatory.

66. Plaintiffs have been damaged by defendants' defamatory statements.

67. Defendants' conduct showed willful misconduct, malice, and oppression. Plaintiffs therefore pray for additional exemplary and punitive damages, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment in their favor and against defendants and relief as follows:

1.  Awarding compensatory and punitive damages against defendants, jointly and severally, in an amount of twenty million dollars, ($20,000,000.00) together with prejudgment interest at the maximum rate allowable by law;

2.  Awarding plaintiffs their costs and disbursements and reasonable allowances for plaintiffs' counsel and experts' fees and expenses; and

-19-

3. Granting such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury.

Respectfully Submitted,

Dated: October 20, 2000

By: _____
        Sallie A. Blackman.
        Attorney for Plaintiffs

JS44
(Rev 07/89)

**CIVIL COVER SHEET**  00 CV 2175 K (NLS)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I. (a) PLAINTIFFS Myriad International, Inc. | DEFENDANTS Dennis Carlton, Kirk Jones, |
|---|---|
| Worldwide Builders, Inc., Jerome Crawford, Victor Parks, Dr. Michael Goldstein, J.Thomas Wood, Gerald Delgadillo, Jon Curnow, James Webb | W.M. Daugherty & Co. L.L.C., Greenwich Memphis Housing Partners, LLC William M. Daugherty |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   San Diego   DaVid Webb (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  New York (IN U.S. PLAINTIFF CASES ONLY) |
|---|---|
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| **Sallie A. Blackman** 121 Broadway Suite 347 San Diego, California (619) 334-6060    92101 | |

**II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
(For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

Breach of Partneship Agreement, Conspiracy,
Defamation, Breach of Fiduciary Duties; Diversity of Citizenship

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 160 Stockholders Suits | | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | |
| ☑ Other Contract | ☐ 90 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☑ Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ 20,000,000 | Check YES only if demanded in complaint: JURY DEMAND: ☑ YES ☐ NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE | | Docket Number |
|---|---|---|---|

DATE  10-13-00     SIGNATURE OF ATTORNEY OF RECORD

#65377 $150